[L. A. No. 3233.   Department One.—December 9, 1913.]

## H. P. ERNST, Appellant, v. FIDEL GANAHL, Respondent.

BROKER—EXCHANGE OF LANDS—FAILURE TO FIND CUSTOMER—TERMINA-
TION OF CONTRACT—EVIDENCE—FINDINGS.—In an action to recover a
commission alleged to be due the plaintiff for services rendered by
him as a broker in connection with an exchange of the defendant's
land, the evidence is held sufficient to sustain the findings that the
plaintiff's contract was one to furnish a customer for the defendant's
land, and that it did not create an exclusive agency; that the plain-
tiff did not furnish a customer; that while the defendant did make
an exchange of his land, the same was not negotiated or effected
by the plaintiff, and that prior thereto the authority conferred by
the contract was terminated by the defendant, in entire good faith,
and the contract was abandoned by the plaintiff.

ID.—TERMINATION OF CONTRACT AT WILL OF PARTIES.—A contract
whereby an owner of land agrees to pay a broker a specified com-
mission in case he furnishes a customer for the property, which does
not specify any time for its duration, may be terminated at will by
either party; subject only to the ordinary requirements of good
faith.

ID.—BROKER'S RIGHT TO COMMISSION—PRODUCING CUSTOMER.—Under
such a contract it is essential to entitle the broker to his commis-
sion, that he should furnish, during the life of the contract, a
customer ready, able, and willing to take the property upon terms
satisfactory to the owner.

ID.—FAILURE OF BROKER TO PRODUCE CUSTOMER—TERMINATION OF CON-
TRACT BY OWNER—EXCHANGE SUBSEQUENTLY EFFECTED WITH
PERSON INTRODUCED BY BROKER—GOOD FAITH OF OWNER.—If the
broker to effect an exchange, without any fault on the part of
the owner, fails to produce any satisfactory proposition from a
prospective customer during the life of the contract, and the owner,
in entire good faith and with the acquiescence of the broker, termi-
nates all relations between them, he may subsequently, upon new
and independent negotiations through other parties, conclude an
exchange with the same purchaser, without incurring any liability
to the original broker.

ID.—IDENTITY OF CONTRACT SUED ON—CONTRACT PREPARED BY BROKER TO
NEGOTIATE FOR PROSPECTIVE PURCHASER—RES GESTAE.—In an ac-
tion by a broker to recover a commission alleged to be due him for
effecting an exchange of land for the defendant, in which the
plaintiff claimed to have been acting under a particular written
authorization from the defendant, and the latter that he was acting
under an entirely different one, a writing prepared by the plaintiff,

without the knowledge of the defendant, at the time, as claimed by
him, the defendant's authorization was executed, empowering him on
behalf of the prospective purchaser to negotiate the exchange, is
not a part of the *res gestae* of the transaction between plaintiff
and the defendant, and is inadmissible in proof of the identity of
the contract sued on.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial.
Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, and Tanner, Odell, Odell & Taft,
for Appellant.

Seward A. Simons, for Respondent.

ANGELLOTTI, J.—This is an action brought by plaintiff
to recover two thousand dollars, alleged to be due him from
defendant for services alleged to have been rendered by him
in connection with an exchange of certain real properties
by defendant and one C. C. Kohlmeier. The complaint al-
leged a written contract on the part of defendant, given on
or about June 18, 1908, authorizing plaintiff to sell certain
of his real property for one hundred and fifty thousand dol-
lars, "or to exchange the same for other property which
would be accepted by defendant," and in which defendant
agreed that if the property was sold by or through the efforts
of plaintiff, or to any one whom plaintiff should produce
who should purchase the same or should make an exchange
therefor, he would pay plaintiff a commission of two thous-
and dollars. It was further alleged that plaintiff produced
said Kohlmeier, and negotiated an exchange of properties
between the latter and defendant, which was consummated
on or about September 10, 1908. By his answer, defendant
denied the contract alleged; alleged that the agreement be-
tween them was one by which he agreed to pay plaintiff two
thousand dollars' commission in case he furnished him a
customer for the premises referred to for the sum of one
hundred and fifty thousand dollars, the agency not being an
exclusive one; denied that plaintiff produced Kohlmeier as

a purchaser or one who would exchange, and denied that plaintiff negotiated an exchange with Kohlmeier. He further alleged that plaintiff failed to procure any purchaser for his premises or to effect any exchange thereof, and that on or about August 29, 1908, he notified defendant of his inability to so do, and that by mutual consent the agency was terminated.

The trial court found that the agreement between plaintiff and defendant was one executed July 6, 1908, and that the same was as follows:

"Los Angeles, Cal., July 6, 1908.

"I hereby agree to pay H. P. Ernst two thousand (2000) dollars commission in case he furnishes me a customer for my property number 936 and 940 So. Hill St. being 75x153 for the sum of one hundred and fifty thousand dollars. It is understood that this is not an exclusive agency.

"F. GANAHL."

It further found that on August 26, 1908, defendant revoked and withdrew the authority conferred by said contract, and, at said time, on the demand of the defendant, plaintiff surrendered and returned said contract to defendant, and plaintiff abandoned the same. It further found that plaintiff never furnished defendant a customer for the property, and never negotiated an exchange with Kohlmeier, and that while defendant on or about September 10, 1908, did make an exchange of his said property with Kohlmeier, said exchange was not negotiated or effected by plaintiff.

Upon these findings judgment was given that plaintiff take nothing. This is an appeal by plaintiff from such judgment and from an order denying his motion for a new trial.

The suggestion that the findings do not support the judgment is not well based. It is distinctly found that plaintiff never furnished defendant a customer for his premises, and never negotiated an exchange of the property with Kohlmeier. The contract found was one to furnish a customer, which the court found was never done by plaintiff. The findings further completely negatived the allegation of the complaint in so far as any services in connection with an exchange with said properties are concerned. They further show a termination of the authority of plaintiff, and a surrender and abandonment of the contract by him. We do not

see how the effect of these findings is at all impaired by the finding that plaintiff did not conduct any negotiations with Kohlmeier for an exchange after August 25, 1908.  Even if we assume that it must be implied from this that he did conduct negotiations with Kohlmeier prior to August 25, 1908, that fact alone would not impair the effect of the other findings.  And the same is true of the fact found that an exchange was effected between defendant and Kohlmeier on or about September 10, 1908, which exchange was not negotiated or effected by plaintiff.

Upon the question as to the contract in fact entered into, plaintiff contended that it was one made and dated June 20, 1908, by which defendant appointed plaintiff his agent to sell his Hill Street property in Los Angeles for one hundred and fifty thousand dollars, and that such contract contained the following provision, viz.: ''And in case said Ernst produces a buyer for cash or exchange, that I may accept a sale of, I agree to pay him a commission of $2000.00.''  According to plaintiff, there was no provision in this contract to the effect that the agency was not an exclusive one.  Defendant's claim was that the contract was the one found by the trial court.  It cannot be doubted that there was sufficient evidence to support the conclusion of the trial court in this regard.  It is, of course, needless to say that the amount of credence to be given to witnesses is exclusively a question for the trial court.

It cannot be claimed, in view of the evidence, that plaintiff ever furnished a customer for defendant's property who offered the sum of one hundred and fifty thousand dollars therefor, or any other sum of money.  The agreement found by the court was on its face, of course, one contemplating simply a sale of the property for one hundred and fifty thousand dollars, nothing being stated therein looking to a possible exchange.  Nor can it be questioned that there was evidence sufficient to support a conclusion that on August 26, 1908, no arrangement for a sale or exchange having been negotiated or agreed upon, plaintiff and defendant had an interview in which defendant declared their relations in the matter at an end, and demanded the return of his authorizations, two in number, the second being an authorization for an exchange with Kohlmeier upon certain specified condi-

tions, given subsequent to July 6, 1908, for a specified term, which had expired. Plaintiff then gave defendant an envelope, which he subsequently found contained only the authorization for the exchange. On August 29, 1908, according to his testimony, defendant again saw plaintiff and insisted upon the return of the authorization of July 6, 1908, and the same was delivered to him. Plaintiff did nothing in the way of attempting to dispose of defendant's property after August 26, 1908, apparently entirely acquiescing in defendant's revocation of authority. The finding of the trial court as to revocation of authority by defendant and abandonment of the matter by the plaintiff is sufficiently supported by evidence.

Unless, then, by reason of the facts in relation to the Kohlmeier exchange, plaintiff was entitled to a commission under his contract, it is clear that all the findings essential to support the judgment in favor of defendant are sufficiently sustained by the evidence. In view of the findings the evidence must be considered in the light most favorable to defendant. The evidence being so considered it must be concluded that there was no proposition on the part of defendant for negotiations looking for an exchange of his property for Kohlmeier's, until after July 6, 1908. Kohlmeier's property consisted of a ranch in Orange County, with certain personal property, which he was willing to sell for one hundred thousand dollars. Defendant's Hill Street property in Los Angeles was valued at one hundred and fifty thousand dollars by defendant, and was subject to a mortgage for thirty-five thousand dollars. According to the evidence of defendant, nothing was said about a possible exchange with Kohlmeier until after July 6, 1908. On July 7, 1908, plaintiff introduced Kohlmeier to defendant. A possible exchange of properties was suggested and defendant examined the Kohlmeier property. Certain propositions for an exchange were made by defendant through plaintiff. The first proposition was that an exchange be made upon a basis of one hundred and fifty thousand dollars for defendant's property, and one hundred thousand dollars for Kohlmeier's property, Kohlmeier to convey his property to defendant and to pay defendant fifteen thousand dollars, and to receive in return a deed of defendant's property subject to the thirty-five

thousand dollar mortgage. Kohlmeier absolutely declined to consider the proposition. Another proposition was made by defendant, under which he was to receive from Kohlmeier only five thousand dollars in cash, and the Kohlmeier property, in return for his property, subject to the mortgage. A written agreement was given to plaintiff by defendant authorizing such an exchange, a time limit of five days being specified therein. This was subsequently extended at plaintiff's request for three days, expiring August 25, 1908. This proposition was also declined by Kohlmeier, and on August 26th plaintiff so informed defendant. He further informed him that Kohlmeier would. not make the trade, and that he found the mortgage "too big." Thereupon followed the termination of all relations between plaintiff and defendant in the matter, to which we have already referred. Defendant acted in good faith in this regard, believing that no exchange satisfactory to him could be made with Kohlmeier. There was evidence to the effect that Kohlmeier never made any proposition to accept for his ranch defendant's property subject to the thirty-five thousand dollar mortgage. Subsequent to August 26th, the firm of Meyer & Johnson, which had had business transactions with defendant, sought authority from him to take up the matter of a proposed exchange with Kohlmeier, and they were authorized to see what they could do in the matter. They enlisted the aid of one Waterman, a friend of Mr. and Mrs. Kohlmeier. The proposition of a trade of the Hill Street property, subject to the thirty-five thousand dollar mortgage, for Kohlmeier's property, and five thousand dollars cash was again made through Waterman, and declined, Kohlmeier especially objecting on account of the mortgage which was to soon fall due, which he feared he might not be able to take care of. After this, Waterman induced Kohlmeier to accept a proposition for an even exchange of the Hill Street property subject to the thirty-five thousand dollar mortgage, for the Kohlmeier property, with the understanding expressed in the agreement that if Kohlmeier was unable to renew the mortgage for the whole thirty-five thousand dollars when it fell due, defendant would loan him fifteen thousand dollars thereof to assist him in taking care of it. Upon this basis the exchange was effected, and such exchange was wholly due to the efforts of Meyer & Johnson and Waterman.

There was no bad faith on the part of defendant. Of course, there was evidence opposed to the statements we have made. We repeat that we must take the evidence in the light most favorable to defendant. So taking it, we must assume the facts as to the Kohlmeier matter to be as above stated, for there is substantial evidence to that effect.

Upon these facts we can see no warrant for the claim that plaintiff was entitled to a commission under his contract, on the theory that he furnished a customer, even if we assume that the contract would include the case of an exchange of properties. The contract not specifying its duration, either party was at liberty to terminate it at will, subject only to the ordinary requirements of good faith. (See *Sibbald* v. *Bethlehem etc. Co.*, 83 N. Y. 378, 384, 385, [38 Am. Rep. 441].) We have seen that there was enough in the evidence to support a conclusion that there was no bad faith in the matter. It was essential to plaintiff's success under his contract and his right to any commission thereunder, that he should furnish, during the life of the contract, a customer ready, able, and willing to take defendant's property upon terms satisfactory to the latter. We do not understand that there is any dissent in the authorities in this state on this proposition, where the contract is substantially like the one here involved. This question is fully discussed and the authorities reviewed in the opinion of Mr. Justice Melvin in *Brown* v. *Mason,* 155 Cal. 155, [12 L. R. A. (N. S.) 328, 99 Pac. 867]. (See, also, *Roper* v. *Rosenfeld,* 145 Cal. 677, 678, [79 Pac. 354]; *Sibbald* v. *Bethlehem etc. Co.*, 83 N. Y. 378, [38 Am. Rep. 441].) What we have already said shows that it cannot be held by an appellate court, in the face of the findings in the trial court, that plaintiff fulfilled these requirements. We must take the case as one where the broker, without any fault on the part of the owner, failed to produce any satisfactory proposition, or even any proposition, from another during the life of the contract, and where the owner acting in entire good faith terminated all relations between himself and the broker, the broker acquiescing therein. That subsequently, upon new and independent negotiations through other parties, an exchange between the same parties was effected, cannot affect the question. (See *Brown* v. *Mason,* 155 Cal. 155, [12 L. R. A. (N. S.) 328, 99 Pac. 867]; *Sibbald* v. *Bethlehem etc. Co.,* 83

N. Y. 378, [38 Am. Rep. 441].)   Plaintiff's contention in this
behalf is necessarily based upon an assumption of bad faith
on the part of the defendant in the matter of the termination
of the relations between himself and plaintiff, an assumption
that, as we have seen, we cannot make in view of the evidence
and findings.

Complaint is made that the trial court erred in refusing to
admit in evidence a written authorization from Kohlmeier to
plaintiff dated June 20, 1908, for the sale of his ranch prop-
erty for one hundred thousand dollars, and providing that in
case that plaintiff furnished him a buyer, "either for cash or
for exchange, that I may accept a sale of," Kohlmeier would
pay a specified commission to plaintiff.   Plaintiff claimed on
the trial that this authorization was substantially similar in
terms to the one testified to have been given him by defendant
on or about June 20, 1908, which had been returned to de-
fendant in August, 1908.   He further claimed that the two
forms were prepared by him at the same time, for the pur-
pose of obtaining the necessary authorizations from both de-
fendant and Kohlmeier for negotiations for an exchange.
The real effort of plaintiff in this connection was to show that
the authorization in fact given to plaintiff was the one testified
by him to have been given, rather than the one testified to by
defendant as having been given.   We are of the opinion that
it was not admissible for any such purpose.   According to
plaintiff's testimony, it was a separate and a distinct matter
from the alleged contract of defendant, having no connection
therewith except that plaintiff prepared the two at about the
same time, with a view in his own mind of obtaining author-
izations from both defendant and Kohlmeier.   They were not
signed at the same time, and there was nothing to indicate
that defendant had any knowledge of the Kohlmeier author-
ization.   In no proper sense of the term can it be said to be
a part of the *res gestae* in so far as any transaction between
plaintiff and defendant is concerned.   It was simply another
distinct paper prepared by plaintiff himself, in what was
really another distinct matter, and was entirely collateral
and extrinsic to the matter under investigation.   It was cor-
rectly conceded by the learned trial judge that the paper
might be used by plaintiff if necessary to refresh his memory
as to the contents of the Ganahl contract.   But this would

not entitle him to put it in evidence over the objection of the adverse party. Plaintiff did testify positively and absolutely as to the contents of the contract between himself and defendant.

No other matter suggested in the briefs requires notice.

The judgment and order denying a new trial are affirmed.

Sloss, J., and Shaw, J., concurred.